UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

Present: The Honorable  CHRISTINA A. SNYDER

| Catherine Jeang | Phyllis Preston | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Enzo Nabiev                           Joel Andersen

**Proceedings:** PLAINTIFF'S MOTION TO REMAND CASE TO LOS ANGELES COUNTY SUPERIOR COURT (Dkt. 15, filed on June 2, 2025)

DEFENDANT AGILITI HEALTH, INC.'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS (Dkt. 10, filed on May 19, 2025)

## I.  INTRODUCTION

On April 3, 2025, plaintiff Erica Rose Quiles, individually and on behalf of all others similarly situated ("plaintiff"), filed this class action complaint against defendants Agiliti Health, Inc. ("Agiliti") and Does 1-10 (collectively, "defendants") in Los Angeles County Superior Court. Dkt. 1-3 ("Compl."). Plaintiff asserts eight claims for relief: (1) failure to pay minimum wages, Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197; (2) failure to pay overtime compensation, Cal. Lab. Code §§ 1194 and 1198; (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7, 512; (4) failure to authorize and permit rest breaks, Cal. Lab. Code § 226.7; (5) failure to indemnify business expenses, Cal. Lab. Code § 2802; (6) failure to timely pay final wages at termination, Cal. Lab. Code §§ 201-203; (7) failure to provide accurate itemized wage statements, Cal. Lab. Code § 226; and (8) unfair business practices, Cal. Bus. & Prof. Code §§ 17200, *et seq.* Id.

On May 6, 2025, defendant Agiliti removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Dkt. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

On May 19, 2025, Agiliti filed the instant motion to compel arbitration, dismiss class claims, and stay proceedings. Dkt. 10 ("Mot. 1"). On May 27, 2025, plaintiff filed an opposition. Dkt. 13 ("Opp. 1"). On June 2, 2025 Agiliti filed a reply. Dkt. 14 ("Reply 1").

Separately, on June 2, 2025, plaintiff filed the instant motion to remand the case to Los Angeles County Superior Court. Dkt. 15 ("Mot. 2"). On June 9, 2025, Agiliti filed an opposition. Dkt. 17 ("Opp. 2"). On June 23, 2025, plaintiff filed a reply. Dkt. 19 ("Reply 2").

On July 7, 2025, the Court held a hearing. Plaintiff's motion to remand and Agiliti's motion to compel arbitration, dismiss class claims, and stay proceedings are presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    Allegations in the Complaint

Plaintiff is a California resident and former employee of defendant Agiliti, a corporation incorporated in Delaware and headquartered in Minnesota. Dkt. 1 ¶¶ 1, 2. Plaintiff worked for defendants from approximately January 2022 to October 2024 and alleges that during the statutory period, she was classified as a non-exempt employee, "typically scheduled to work at least 5 days in a workweek, and typically in excess of 8 hours in a single workday." Compl. ¶¶ 7, 13.

Plaintiff seeks to represent a proposed class of "[a]ll persons who worked for any [d]efendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the [c]lass is sent." Id. ¶ 23. Plaintiff estimates that the class consists of greater than 100 individuals. Id.

Plaintiff alleges that defendants failed to pay plaintiff for all hours worked, failed to provide plaintiff with uninterrupted meal periods, failed to authorize and permit uninterrupted rest periods, failed to indemnify plaintiff for business expenses, failed to timely pay final wages to plaintiff upon termination, and failed to furnish accurate wage statements to plaintiff. Id. ¶ 14. Plaintiff claims that her experience was "typical and illustrative" as an employee of defendants. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

According to plaintiff, defendants maintained a "policy and practice" not to pay plaintiff and the putative class members for all hours worked, including overtime compensation owed to them. Id. ¶ 15. In regard to minimum wage payment, plaintiff states that defendants "systematically failed and refused to pay [p]laintiff and the [c]lass all such wages due, and failed to pay those wages twice a month." Id. ¶ 38. Plaintiff alleges that she and the putative class members "sometimes" worked in excess of eight hours per day or 40 hours per week and were not paid all overtime compensation they were owed. Id. ¶ 15. In addition, plaintiff states that plaintiff and the putative class members were "regularly required to work overtime hours." Id. ¶ 44. Additionally, plaintiff states that she and the putative class members were "sometimes" required to work off the clock and were "occasionally" interrupted during meal breaks without compensation. Id. ¶ 15. Plaintiff claims that she and the putative class members received remuneration, such as non-discretionary bonuses and shift-differentials, and that defendants "failed to incorporate all remuneration when calculating the correct overtime rate of pay, meal break premium rate of pay, and sick day rate of pay, leading to underpayment." Id.

Plaintiff states that throughout the statutory period, defendants' "policy and practice" failed to provide plaintiff with compliant meal periods. Id. ¶ 16. Plaintiff alleges that "sometimes, but not always," she and the putative class members were required to work more than five consecutive hours per day without a "30-minute, continuous and uninterrupted, duty-free meal period," or that they were not appropriately compensated for such meal periods. Id. Similarly, plaintiff states that defendants failed to authorize and permit plaintiff and the putative class members to take timely and duty-free rest periods, "sometimes, but not always," requiring them to work in excess of four consecutive hours without a ten-minute break, or without compensation for the missed rest periods. Id. ¶ 17. Additionally, plaintiff alleges that defendants did not have "adequate polices or practices to verify whether [p]laintiff and the [c]lass were taking their required rest periods" and did not keep accurate records of their employees' work periods. Id. Therefore, plaintiff asserts that defendants cannot demonstrate that plaintiff and the putative class members took rest periods during the middle of each work period. Id. Further, plaintiff claims that defendants "did not adequately inform" plaintiff and the putative class members about their right to take meal and rest periods. Id. ¶¶ 16, 17.

Additionally, plaintiff alleges that defendants required plaintiff and the putative class members "to pay expenses that they incurred in direct discharge of their duties,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'  JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

such as the use of personal cellphones, the use of personal vehicles, and the purchase of items, such as specific scrubs and shoes, without reimbursement. Id. ¶ 18. Next, plaintiff states that defendants "willfully failed and refused to timely pay [p]laintiff and the [c]lass at the conclusion of their employment all wages for all minimum wages, overtime wages, meal period premium wages, and rest period wages" and further failed to provide them with final paychecks immediately upon termination. Id. ¶ 19. Lastly, plaintiff alleges that defendants failed to furnish plaintiff and the putative class members with accurate, itemized wage statements showing all applicable hourly rates, all gross and net wages earned, and Agiliti's address. Id. ¶ 20. Plaintiff then describes how this violation caused injury to her and the putative class members. Id.

    **B.**    **Declaration of Jim Kahrs**

Attached to its opposition to the motion to remand, Agiliti submits the declaration of Jim Kahrs ("Kahrs"), its Human Resources Director. Dkt. 17-2 ¶ 1. Kahrs states that he is "familiar with and ha[s] personal knowledge of Agiliti's organization, operations, policy-making procedures, workforce distributions, general business affairs, and employee personnel information." Id. Kahrs also states that Agiliti is a "nationwide medical equipment and services outsourcing company." Id. ¶ 2. Kahrs asserts that he reviewed Agiliti's records and found that plaintiff's current hourly rate as an Agiliti employee is $23.12. Id. ¶ 4. Further, he found that, between April 3, 2021 and June 6, 2025, Agiliti employed at least 938 hourly, non-exempt employees in California. Id. ¶ 6. He states that at that time, the average hourly wage for Agiliti's California employees was $25.60. Id. Additionally, Kahrs states that since April 3, 2021, Agiliti has issued more than 31,142 biweekly wage statements to non-exempt California employees. Id. ¶ 7. Finally, he asserts that during the relevant time period, 452 California employees separated from their employment with Agiliti. Id. ¶ 8.

**III.   LEGAL STANDARD**

    **A.**    **Remand**

Remand may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. See 28 U.S.C. § 1447(c). The Court strictly construes the removal statutes against removal jurisdiction, and jurisdiction must be rejected if there is any doubt as to the right of removal. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O' JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

CAFA gives federal courts jurisdiction over certain class actions if (1) "the class has more than 100 members"; (2) "the parties are minimally diverse"; and (3) "the amount in controversy exceeds $5 million." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84-85 (2014). There is no presumption against removal jurisdiction in CAFA cases; however, the defendant still bears the burden of establishing removal jurisdiction. Id. at 554. CAFA's "minimal diversity" requirement means that "a federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 165 (2014) (quoting 28 U.S.C. § 1332(d)(2)(A)). Where, as here, the amount in controversy is contested, and the plaintiff does not plead a specific amount in controversy, the defendant's evidentiary burden in opposing a motion to remand depends on whether plaintiff has mounted a facial or factual attack on defendant's jurisdictional allegations. Salter v. Quality Carriers, Inc., 974 F.3d 959, 964 (9th Cir. 2020). A facial attack "accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction," thus calling for the Court to "determine[] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Id. (quoting Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014)). In contrast, a factual attack "contests the truth of [defendant's] factual allegations, usually by introducing evidence outside the pleadings." Id. "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020). Although a plaintiff may present evidence in support of a factual attack, they "need only challenge the truth of defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by the evidence." Id. at 700.

Under the preponderance of the evidence standard, the removing party must "provide evidence establishing that it is more likely than not that the amount in controversy exceeds [the jurisdictional amount]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotation omitted). In determining whether the removing party has satisfied this burden, the district court may consider facts in the removal petition and "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) (quoting Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335–36 (5th Cir. 1995)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

    **B.**    **Arbitration**

    The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626 (1985). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).

    When determining whether a valid and enforceable contract to arbitrate has been established for the purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002). "[A]greements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). The party asserting a defense to the enforceability of an arbitration agreement has the burden of proving that defense by a preponderance of the evidence. See Engalla v. Permanente Med. Grp., 15 Cal.4th 951, 972 (1997).

**IV.**    **DISCUSSION**

    "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007). Accordingly, the Court will first decide the threshold question of its jurisdiction under plaintiff's motion to remand, and then address Agiliti's motion to compel arbitration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

Plaintiff argues that Agiliti has not satisfied its burden of proving that the amount in controversy exceeds $5 million. Mot. 2 at 5. As for the first and second claims, plaintiff contends that Agiliti's notice of removal assumes that putative class members worked approximately one hour of unpaid overtime and one hour of unpaid minimum wage per biweekly pay period. Id. at 7. However, according to plaintiff, Agiliti fails to provide any extrinsic evidence that putative class members worked long enough shifts to be entitled to overtime pay for every pay period throughout the class period. Id. Further, plaintiff argues that Agiliti fails to account for any sick days, vacation days, and other leave of absence of putative class members. Id. Plaintiff also argues that this assumption is not supported by the allegations in the complaint. Id. at 8. Plaintiff argues that Agiliti provides no evidence that every non-exempt employee worked a certain amount of unpaid overtime per week. Id. at 9. Even if it did, plaintiff contends that it is not reasonable to assume that all putative class members experienced the exact same violations. Id. Plaintiff also argues that Agiliti should not be permitted to count unpaid minimum wage in both its calculation for unpaid overtime and its calculation for unpaid minimum wage. Id. (citing Chavez v. Pratt (Robert Mann Packaging), LLC, No. 19-CV-00719-NC, 2019 WL 1501576, at *5 (N.D. Cal. Apr. 5, 2019)).

As for the third and fourth claims, plaintiff again argues that Agiliti lacks evidence to support its assumed violation rates. Id. Specifically, plaintiff argues that Agiliti's declaration does not include evidence supporting the assumption that all class members worked the requisite number of hours to entitle them to meal or rest breaks. Id. at 12. Further, plaintiff contends that the violation rates are not supported by the complaint, which alleges that Agiliti "regularly failed" to provide meal and rest periods, and "regularly" does not necessarily mean one violation per week. Id. at 12-13.

Finally, plaintiff argues that Agiliti fails to satisfy its burden to justify its calculation for future attorneys' fees. Id. Plaintiff contends that the Ninth Circuit has rejected a per se rule that attorneys' fees should be calculated as 25% of the overall recovery in this context. Id. at 14. Plaintiff argues that the Court should reject Agiliti's calculation of attorneys' fees as 25% because Agiliti does not provide any evidence that it is reasonable. Id. at 15. Further, plaintiff contends that even using the 25% benchmark, Agiliti's calculation is unreasonable because it is based on an unsupported calculation of plaintiff's total recovery. Id. at 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

In opposition, Agiliti argues that plaintiff attempts to hold it to an erroneously high standard. Opp. 2 at 4. For the first four claims, Agiliti contends that it is not required to present evidence of each class member's work and leave schedule and off the clock work time; rather, it is permitted to make reasonable assumptions about violation rates based solely on the complaint's vague allegations. Id. at 4-5 (citing Perez v. Rose Hills Co., 131 F.4th 804, 808 (9th Cir. 2025). Agiliti contends that plaintiff relies on pre-Rose Hills authority. Id. at 6. Agiliti estimates that the amount in controversy for all claims is $5,258,871.76, exceeding the CAFA threshold even before consideration of attorneys' fees. Id. Agiliti states that this estimate considers a putative class of 938 employees and assumes a four-year statute of limitations.[1] Id. at 6-7.

As for the first claim, Agiliti states that the amount in controversy is $924,294.56 in unpaid minimum wages. Id. at 7. Agiliti contends that it derived this number from the following allegations in the complaint: that Agiliti "maintained a systematic, company-wide policy and practice" of failing to pay employees all minimum wages; that plaintiff, a full-time employee, typically worked five days per week, in excess of eight hours per day; and that her experience was "typical and illustrative" of other employees. Id. Agiliti argues that it is therefore reasonable to assume a violation rate of one hour of unpaid minimum wage per biweekly pay period. Id. Agiliti argues that this rate, just 1.25%, is "exceedingly low," considering the alleged "policy" of not paying all hours worked. Id. Agiliti contends that even if an employee was part-time and worked 20 hours per week (though plaintiff states she worked full-time and was "typical,") the violation rate would be only 2.5%. Id. Because the assumed rate is so slow, Agiliti asserts that it "reasonably accounts for the normal variance in any employee's schedule for vacation and sick days." Id.

As for the second claim, Agiliti states that the amount in controversy is $1,195,852.80 in unpaid overtime wages. Id. at 8. Agiliti contends that it derived this number from the following allegations in the complaint: that Agiliti "maintained a policy and practice of not paying" for overtime wages; that plaintiff, a full-time employee, typically worked five days per week, in excess of eight hours per day; and that her experience was "typical and illustrative" of other employees. Id. According to Agiliti,

---

[1] Agiliti states that the calculations in its opposition brief differ from those in the notice of removal and provide a "better estimate." Opp. 2 at 7. Therefore, the Court does not consider the calculations in the notice of removal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

this alone supports Agiliti's assumption of one hour of unpaid overtime per biweekly pay period. Id. at 8-9. Agiliti states that additional allegations make clear that Agiliti's estimate is conservative, as plaintiff also alleges that the class members occasionally worked off the clock, and therefore, they may have worked overtime that never made the records. Id. at 9. Additionally, according to Agiliti, plaintiff alleges that the class members received "other remuneration" that was never included in their overtime pay. Id. Agiliti states that its estimate does not account for these other remunerations, further demonstrating that the estimate is conservative. Id. Agiliti then disputes plaintiff's argument that overtime wages should not be included because they represent "double recovery" of the minimum wage claim, distinguishing Chavez. Id. at 9-10.

As for the third and fourth claims, Agiliti states that the amount in controversy is $1,594,470.40 for meal and rest break premiums. Id. at 10. Agiliti contends that it derived this number from the following allegations in the complaint: that Agiliti "sometimes, but not always" required plaintiff and the class members to work without receiving timely, uninterrupted, and duty-free meal and rest breaks; and that it was Agiliti's "policy and practice" to not provide compliant meal and rest periods or the one-hour wage premium in lieu of such breaks. Id. Agiliti argues that it is therefore reasonable to assume that at least one meal and one rest period violation occurred per biweekly pay period. Id. According to Agiliti, its estimate is conservative because, assuming a typical ten-shift biweekly pay period, that is an average violation rate of 10% for meal periods and 5% for rest breaks. Id. at 10-11.

As for the fifth claim, Agiliti states that the amount in controversy is $155,710 for unreimbursed business expenses. Id. at 11. Agiliti contends that it derived this number from the following allegations in the complaint: that Agiliti failed to reimburse class members for personal cellphones, personal vehicles, and the purchase of shoes and scrubs. Id. Agiliti's estimate assumes the claim is worth $5 per wage statement, or $10 per month, which is "far less than most individuals pay" for a cell phone or for gasoline each month. Id. As for the sixth claim, Agiliti states that the amount in controversy is $1,388,544 for waiting time penalties. Id. at 12. According to Agiliti, plaintiff does not dispute Agiliti's reasonable assumption that wage penalties continued for 15 days, half the possible maximum. Id. Further, Agiliti argues that the Ninth Circuit has held that it was reasonable to assume a 100% violation rate for this kind of claim. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'     JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

As for attorneys' fees, Agiliti states that the amount in controversy is up to $1,314,717.94. Id. at 13. Agiliti states that the underlying numbers supporting its calculation are reasonable, if not conservative, and that plaintiff's counsel has previously supported the percentage approach for awarding attorneys' fees. Id. Alternatively, Agiliti argues that attorneys' fees can be calculated using the lodestar method. Id. at 14. Agiliti refers to plaintiff's attorneys' requested hourly rates in other wage-and-hour cases, as well as an approximate average of the number of hours they expended working on them. Id. Agiliti contends that the attorneys' fees would total at least $72,500 under this approach and would increase to $217,500 if a "positive multiplier" is awarded. Id. at 15.

In reply, plaintiff argues that Rose Hills requires a defendant's assumptions to be reasonable and to be tethered to the complaint's allegations. Reply 2 at 1. Rose Hills did not, according to plaintiff, fully abrogate prior case law. Id. According to plaintiff, the analysis of prior case law in Rose Hills confirms that, if the district court finds that the assumed violation rate is an unreasonable interpretation of the complaint, the defendant is required to submit evidence to support its assumed violation rate. Id. at 3. Here, plaintiff asserts that because Agiliti's assumptions are unreasonable and Agiliti did not submit evidence to support them, Agiliti fails to meet its burden. Id. For example, plaintiff argues that the complaint does not state the length of plaintiff's shifts, and Agiliti does not provide any evidence showing that class members worked shift lengths that would entitle them to overtime, meal breaks, and rest breaks. Id. at 4.

Next, plaintiff distinguishes cases that have relied on allegations of a defendant's "pattern and practice," as here, plaintiff alleges a "policy and practice," not a "pattern." Id. at 5. Plaintiff then argues that Agiliti's calculations are unreasonable. Id. at 6. As for the first claim, plaintiff asserts that Agiliti "wrongly equates [p]laintiff's allegation of 'failure to pay for all hours worked' with a violation of one unpaid hour per biweekly pay period." Id. Plaintiff states that "there is no basis to conclude that one hour is any more reasonable than [30] minutes or two hours." Id. As for the second claim, plaintiff argues that Agiliti's assumption of one hour of unpaid overtime per biweekly pay period is not reasonable because it is not grounded in the complaint, even if it is "conservative." Id. at 7. Next, plaintiff disputes Agiliti's argument about double recovery for minimum wage and overtime pay violations. Id. at 8. Plaintiff states that, pursuant to Chavez, any unpaid time worked by plaintiff would be primarily overtime, not minimum wage, because her "total hours" exceeded the overtime threshold. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

As for the third, fourth, and fifth claims, plaintiff argues again that Agiliti's rates are not reasonable because they are not grounded in the language of the complaint. Id. at 8-9. Turning to the sixth claim, plaintiff argues that Agiliti's calculation is not reasonable because Agiliti misstates the number of separated employees. Id. Finally, as for attorneys' fees, plaintiff argues that it is unreasonable to assume that her attorneys will work 100 hours on this matter, that each attorney will work the same amount, and that they will receive a positive multiplier of three. Id. at 10.

The Court determines that Agiliti has not met its burden of establishing removal jurisdiction. Because there is no dispute as to the size of the putative class or the presence of minimal diversity, the Court examines only the amount in controversy to determine if CAFA's requirements are met.

In estimating the amount in controversy to establish CAFA jurisdiction, "the defendant is permitted to rely on a chain of reasoning that includes assumptions." Perez v. Rose Hills Co., 131 F.4th 804, 808 (9th Cir. 2025) (citing Arias v. Residence Inn by Marriott, 936 F.3d 920, 925 (9th Cir. 2019)). "While those assumptions cannot be pulled from thin air, they can be founded on the allegations of the complaint and do not necessarily need to be supported by evidence." Id. (citing Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1199 (9th Cir. 2015) and Arias, 936 F.3d at 925). "The district court's task is simply to determine if the defendant's reasoning and underlying assumptions are reasonable." Id. (citing Jauregui v. Roadrunner Transportation Servs., Inc., 28 F.4th 989, 993 (9th Cir. 2022)). "Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." Jauregui, 28 F.4th at 996.

The Court agrees with plaintiff that Rose Hills did not overturn the Ninth Circuit's previous decisions in Arias and Ibarra. Rather, Rose Hills "approved" of the approach in Arias, where defendant provided a declaration from a company representative showing the number of putative class members and "tethered" its assumptions about violation rates to the language of the complaint—"namely, [allegations] that it had committed the alleged violations 'at times' and 'throughout the statutory period.'" Rose Hills, 131 F.4th at 809. This "tether[ing]" to the complaint made the assumptions reasonable. Id. Examining Ibarra, by contrast, the Ninth Circuit stated that the defendant was required to "submit evidence of the violation rate because its interpretation of the allegations in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

complaint was *unreasonable*." Id. (emphasis in original). "Our decision [in Ibarra] suggests only that if a violation rate cannot be justified by the allegations in the compliant, it must be justified by something else." Id.

Specifically as to plaintiff's third claim for meal period violations and fourth claim for rest period violations, the Court finds that Agiliti's assumptions are not reasonable, as they are not justified by allegations in the complaint or by "something else," i.e., extrinsic evidence. See Rose Hills, 131 F.4th at 809.

California Labor Code § 226.7(c) provides that an employee who experiences a meal or rest period violation is entitled to "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest… period is not provided." Cal. Lab. Code § 226.7(c). An employee is entitled to a meal period after five hours of work, unless the total work period of the day "is no more than six hours" and the employee waives the meal period. See Cal. Lab. Code § 512(a). After ten hours of work, an employee is entitled to a second meal period, unless the total work period of the day "is no more than 12 hours," and the employee waives the second meal period. See id. Further, an employee is entitled to a rest period for every four hours of work "or major fraction thereof," unless the employee's "total daily work time is less than [3.5] hours." See IWC Wage Orders § 12.

To calculate the amount in controversy for these claims, Agiliti must make a reasonable assumption regarding the number of meal and rest period violations. It appears that this calculation requires knowledge of the number of shifts worked by putative class members that would qualify for meal and rest periods. In other words, to calculate the number of meal period violations, the defendant must incorporate the number of shifts worked exceeding five hours and the number of shifts worked exceeding ten hours; to calculate the number of rest period violations, the defendant must incorporate the number of shifts worked exceeding four hours.

Here, Agiliti does not provide an estimate of the number of qualifying shifts for these claims. Rather, Agiliti simply states that it is reasonable to assume that at least one meal and one rest period violation occurred for each putative class member per biweekly pay period, based on the allegation that Agiliti maintained a "policy and practice" of not providing legally compliant meal and rest periods. Opp. 2 at 10; Compl. ¶¶ 16-17. The Court finds that this assumption is not reasonable because it is not tethered to or justified by any allegation in the complaint, as required by Rose Hills. Further, it is not justified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

by any evidence provided by Agiliti. This is especially unreasonable because Agiliti, as the employer of the putative class members, can "easily determine" these data by examining its employment records, without having to present evidence of its "ultimate liability." See Woods v. C.H. Robinson Co., Inc., No. 25-CV-00294-SK, 2025 WL 914762, at *5 (N.D. Cal. Mar. 26, 2025) (explaining that "[i]t makes sense to expect a defendant to introduce evidence of the length of employees' shifts" and finding that assumptions about meal and rest periods were unreasonable, because plaintiff did not allege how many qualifying shifts were worked and defendant did not offer any evidence about the class members' average shift lengths); Harris v. KM Indus., Inc., 980 F.3d 694, 702 (9th Cir. 2020) (holding that it was unreasonable to assume that the class members "worked shifts long enough to entitle them to meal and rest periods" when the defendant "offered no proof that all of the 442 Hourly Employee Class members worked sufficient shifts during the 39,834 workweeks to qualify them for meal and rest periods."); Burgos v. Citibank, N.A., No. 23-CV-01907-AMO, 2023 WL 5532123, at *5 (N.D. Cal. Aug. 28, 2023) (distinguishing Harris where the defendant presented evidence about the average length of time worked per employee each workday). See also Rose Hills, 131 F.4th at 808 (noting that it "may make sense" to expect defendants to "introduce evidence" of the number of employees in a wage-and-hour case, as the number can be "most easily determined by examining the defendant's employment records").

At oral argument, Agiliti's counsel argued that it was not required to submit extrinsic evidence of the number of qualifying shifts worked because the complaint states that plaintiff's experience was "typical." According to Agiliti's counsel, this factual allegation distinguishes the instant case from Woods, Harris, and Burgos. The Court is not persuaded by this argument. The allegation that plaintiff's experience was "typical" is not an allegation that she and the putative class members always worked shifts in excess of eight hours or always worked shifts that qualified for meal or rest periods. Rather, plaintiff alleges that she and the putative class members "sometimes" worked in excess of eight hours per day and "sometimes" worked off the clock, see Compl. ¶ 15, and "sometimes, but not always" worked without legally compliant meal and rest periods, see id. ¶¶ 16-17. Because the number of qualifying shifts worked is not alleged in the complaint, the number used in Agiliti's calculations must be justified by "something else," i.e., extrinsic evidence. See Rose Hills, 131 F.4th at 809. Agiliti can "easily determine[]" this number through its employment records without having to present evidence of its "ultimate liability," and therefore, Agiliti must present evidence of the number of qualifying shifts to defeat the motion to remand. See id. at 808.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 2:25-cv-04032-CAS-SKx | Date | July 7, 2025 |
|---|---|---|---|
| Title | Erica Rose Quiles v. Agiliti Health Inc. | | |

Because Agiliti's assumptions are "unreasonable on [their] face without comparison to a better alternative," the Court is "justified in simply rejecting [them]." Jauregui, 28 F.4th at 996. Accordingly, the Court rejects Agiliti's calculation of $797,235.20 in controversy for the third claim and $797,235.20 in controversy for the fourth claim. Assuming *arguendo* that Agiliti's calculations for the other claims are reasonable, including its higher estimate of attorneys' fees, this reduces Agiliti's total calculation of the amount in controversy to $4,979,119.30. Because this amount is less than the CAFA jurisdictional threshold, the Court finds that Agiliti has not met its burden to establish CAFA jurisdiction and that remand is appropriate.[2]

Because the Court lacks subject matter jurisdiction over this action, it does not reach Agiliti's motion to compel arbitration.

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiff's motion to remand.

IT IS SO ORDERED.

|  | 00 : 10 |
|---|---|
| Initials of Preparer | CMJ |

---

[2] In its tentative ruling issued before oral argument, the Court asked plaintiff's counsel to clarify the assertion in plaintiff's motion that Chavez applied here. At oral argument, plaintiff's counsel conceded that Chavez is distinguishable from the present case in that in Chavez, the evidence presented by the defendant enabled the court to infer that the defendant impermissibly "double counted" claims in its calculations.